| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Mitchell B. Greenberg, Esq. (SBN 114878) ABBEY, WEITZENBERG, WARREN & EMERY, P.C. 100 Stony Point Road, Suite 200 Santa Rosa, CA 95401 Telephone: 707-542-5050 Facsimile: 707-542-2589 mgreenberg@abbeylaw.com<br><br><br>Attorneys for Secured Creditor POPPY BANK<br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| In re:<br><br>HOAN DANG and DIANA HONGKHAM DANG<br><br><br>Debtors.<br><br><br><br>Debtor(s). | CASE NO.: 8:20-bk-11631-TA<br>CHAPTER: 7 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations)**<br>**(REAL PROPERTY)** |
| | DATE: 09/15/2020<br>TIME: 10:00 a.m.<br>COURTROOM: 5B |

| **Movant:** Secured Creditor Poppy Bank |
|---|

1. **Hearing Location**:

   ☐ 255 East Temple Street, Los Angeles, CA 90012          ☒ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367    ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                   Page 1                          **F 4001-1.RFS.RP.MOTION**

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (date) _____ and (time) _____; and, you may appear at the hearing.

a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

c. ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: <u>08/17/2020</u>

<u>Abbey, Weitzenberg, Warren & Emery, P.C.</u>
Printed name of law firm (if applicable)

<u>Mitchell B. Greenberg</u>
Printed name of individual Movant or attorney for Movant

<u>/s/ Mitchell B. Greenberg</u>
Signature of individual Movant or attorney for Movant

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☐ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other (*specify*):

2. **The Property at Issue (Property):**

   a. Address:

   *Street address*: 6 Campbell Place
   *Unit/suite number*:
   *City, state, zip code*: Danville, California 94526

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit __A__): See Legal Description at page 1 of Exhibit A hereto.

3. **Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary   bankruptcy petition under chapter   ☒ 7 ☐ 11 ☐ 12 ☐ 13
   was filed on (*date*) __06/05/2020__ .

   b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13  was entered on (*date*) _____.

   c. ☐ A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

   (1) ☒ Movant's interest in the Property is not adequately protected.

       (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

       (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

       (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

   (2) ☐ The bankruptcy case was filed in bad faith.

       (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

       (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

       (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

       (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

       (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

       (F) ☐ Other (*see attached continuation page*).

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                        Page 3                                F 4001-1.RFS.RP.MOTION

(3) ☐ (*Chapter 12 or 13 cases only*)

   (A) ☐ All payments on account of the Property are being made through the plan.
☐ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

   (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on (*date*) _____,
which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

   (2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other (*specify*):

6. **Evidence in Support of Motion:  (D*eclaration(s) MUST be signed under penalty of perjury and attached to this motion*)**

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☒ Supplemental declaration(s).

c. ☒ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit B____.

d. ☐ Other:

7. ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 4                                    **F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1.  Relief from the stay is granted under:   ☒ 11 U.S.C. § 362(d)(1)   ☒ 11 U.S.C. § 362(d)(2)   ☐ 11 U.S.C. § 362(d)(3).

2.  ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3.  ☐ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.  Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4.  ☐ Confirmation that there is no stay in effect.

5.  ☐ The stay is annulled retroactive to the bankruptcy petition date.  Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6.  ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7.  ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8.  ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9.  ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4):  If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☒ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☒ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☒ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
    ☒ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☒ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☒ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date:  08/17/2020

Abbey, Weitzenberg, Warren & Emery, P.C.
_____
Printed name of law firm (*if applicable*)
Mitchell B. Greenberg
_____
Printed name of individual Movant or attorney for Movant

/s/ Mitchell B. Greenberg
_____
Signature of individual Movant or attorney for Movant

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# REAL PROPERTY DECLARATION

I, (*print name of Declarant*) Kevin Downey_____, declare:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

    a.  ☐  I am the Movant.

    b.  ☐  I am employed by Movant as (*state title and capacity*):  Vice President, Loan Risk Officer

    c.  ☐  Other (*specify*):

2.  a.  ☒  I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

    b.  ☐  Other (*see attached*):

3.  The Movant is:

    a.  ☐  Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit _____.

    b.  ☒  Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit _A___.

    c.  ☐  Servicing agent authorized to act on behalf of the:
        ☐  Holder.
        ☒  Beneficiary.

    d.  ☐  Other (*specify*):

4.  a.  The address of the Property is:

        *Street address*: 6 Campbell Place
        *Unit/suite no.*:
        *City, state, zip code*: Danville, California,

    b.  The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:

        Parcel One: Lot 2 of Subdivision Map 7457, in the City of Danville, County of Contra Costa, State of California, filed March 6, 1998, in Book 398 of Maps, at Page 36, Contra Costa County Records.
        Parcel Two: Non-exclusive easements and rights of access, use and enjoyment in and to the common area, as defined in those certain Declaration of Covenants, Conditions and Restrictions of Campbell Plance, recorded February 18, 1999, Series No. 99-0045866-00, Contra Costa County Records.
        APN: 202-410-002

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5.  Type of property (*check all applicable boxes*):

    a. ☐  Debtor's principal residence       b. ☒  Other residence
    c. ☐  Multi-unit residential             d. ☐  Commercial
    e. ☐  Industrial                         f. ☐  Vacant land
    g. ☐  Other (*specify*):

6.  Nature of the Debtor's interest in the Property:

    a. ☒  Sole owner

    b. ☐  Co-owner(s) (*specify*):

    c. ☐  Lienholder (*specify*):

    d. ☐  Other (*specify*):

    e. ☒  The Debtor  ☒ did  ☐ did not  list the Property in the Debtor's schedules.

    f. ☐  The Debtor acquired the interest in the Property by  ☐ grant deed  ☐ quitclaim deed  ☐ trust deed.
          The deed was recorded on (*date*) _____.

7.  Movant holds a  ☒ deed of trust  ☐ judgment lien  ☐ other (*specify*) _____
    that encumbers the Property.

    a. ☒  A true and correct copy of the document as recorded is attached as Exhibit  A____.

    b. ☐  A true and correct copy of the promissory note or other document that evidences the Movant's claim is
          attached as Exhibit _____.

    c. ☐  A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
          trust to Movant is attached as Exhibit  n/a___.

8.  Amount of Movant's claim with respect to the Property:

|   |   | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ 4,233,101.22 | $ 0 | $ 4,233,101.22 |
| b. | Accrued interest: | $ 140,210.56 | $ 44,707.47 | $ 184,918.03 |
| c. | Late charges | $ 14,573.58 | $ 4,163.88 | $ 18,737.46 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ 4,076 | $ 32,170.91 | $ 36,246.91 |
| e. | Advances (property taxes, insurance): | $ 5,000 | $ 0 | $ 5,000 |
| f. | Less suspense account or partial balance paid: | $[            ] | $[ 1,355,335.34    ] | $[ 1,355,335.34    ] |
| g. | TOTAL CLAIM as of (*date*): | $ 4,396,961.36 | $ | $ 3,122,668.28 |

    h. ☐  Loan is all due and payable because it matured on (*date*) _____

9.  Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action
    has occurred*):

    a.  Notice of default recorded on (*date*)  02/19/2020   or ☐ none recorded.

    b.  Notice of sale recorded on (*date*) _____ or ☒ none recorded.

    c.  Foreclosure sale originally scheduled for (*date*) _____ or ☒ none scheduled.

    d.  Foreclosure sale currently scheduled for (*date*) _____ or ☒ none scheduled.

    e.  Foreclosure sale already held on (*date*) _____ or ☒ none held.

    f.  Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                        Page 7                              F 4001-1.RFS.RP.MOTION

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☒ (*chapter 7 and 11 cases only*) Status of Movant's loan:

    a. Amount of current monthly payment as of the date of this declaration: $ 41,638.18 _____ for the month of August _____ 20 20.

    b. Number of payments that have come due and were not made: 8 ___. Total amount: $ 333,110.64 _____

    c. Future payments due by time of anticipated hearing date (*if applicable*):

       An additional payment of $ 41,638.83 _____ will come due on (*date*) 09/01/2020 , and on the 1st ___ day of each month thereafter. If the payment is not received within 14 ___ days of said due date, a late charge of $ 2,081.94 _____ will be charged to the loan.

    d. The fair market value of the Property is $ 1,700,000 _____, established by:

       (1) ☒ An appraiser's declaration with appraisal is attached as Exhibit C .

       (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

       (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

       (4) ☐ Other (*specify*):

    e. **Calculation of equity/equity cushion in Property:**

       Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | First United Services Credit Union | $ 79,039.24 | $ |
| 2nd deed of trust: | Poppy Bank | $ 4,500,000 | $ 3,122,668.28 |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT:** $ 3,201,707.52 | | | |

    f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit B ___ and consists of:

       (1) ☐ Preliminary title report.

       (2) ☒ Relevant portions of the Debtor's schedules.

       (3) ☐ Other (*specify*):

    g. ☒ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
       I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ 0 _____ and is n/a ___ % of the fair market value of the Property.

    h. ☒ **11 U.S.C. § 362(d)(2)(A) - Equity:**
       By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ [1,501,707.52] _____.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 8                                    **F 4001-1.RFS.RP.MOTION**

i. ☒ Estimated costs of sale: $ 102,000_____ (estimate based upon _6_____% of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☐ (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date:_____.
A plan was confirmed on the following date (*if applicable*): _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:          $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:          $
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:          $[          ]

   TOTAL POSTPETITION DELINQUENCY:          $

g. Future payments due by time of anticipated hearing date (*if applicable*): _____.
An additional payment of $_____ will come due on _____, and on the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late charge of $_____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):

   $_____ received on (*date*) _____
   $_____ received on (*date*) _____
   $_____ received on (*date*) _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent. A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*          Page 9          **F 4001-1.RFS.RP.MOTION**

13. ☒ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (date) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B).  More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property.  A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (date) _____, which is ☐ prepetition. ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

   a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c. ☐ The Debtor filed only a few case commencement documents.  Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d. ☐ Other (specify):

18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b. ☐ Multiple bankruptcy cases affecting the Property include:

      1. Case name: _____
         Chapter: _____   Case number: _____
         Date dismissed: _____   Date discharged: _____   Date filed: _____
         Relief from stay regarding the Property ☐ was  ☐ was not  granted.

      2. Case name: _____
         Chapter: _____   Case number: _____
         Date dismissed: _____   Date discharged: _____   Date filed: _____
         Relief from stay regarding the Property ☐ was  ☐ was not  granted.

      3. Case name: _____
         Chapter: _____   Case number: _____
         Date dismissed: _____   Date discharged: _____   Date filed: _____
         Relief from stay regarding the Property ☐ was  ☐ was not  granted.

    ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

    ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                     Page 10                          F 4001-1.RFS.RP.MOTION

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 08/17/2020 | Kevin Downey | /s/ Kevin Downey |
|---|---|---|
| *Date* | *Printed name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                          Page 11                          **F 4001-1.RFS.RP.MOTION**

# Exhibit A

RECORDATION REQUESTED BY:
  Poppy Bank
  Santa Rosa Main Office
  438 First Street
  Santa Rosa, CA  95401

WHEN RECORDED MAIL TO:
  Poppy Bank
  Santa Rosa Main Office
  438 First Street
  Santa Rosa, CA  95401

SEND TAX NOTICES TO:
  Hoan Dang
  Diana Dang
  6 Campbell Place
  Danville, CA  94526



FOR RECORDER'S USE ONLY



# DEED OF TRUST

THIS DEED OF TRUST is dated August 18, 2018, among Hoan Dang and Diana Dang, husband and wife whose address is 6 Campbell Place, Danville, CA  94526 ("Trustor"); Poppy Bank, whose address is Santa Rosa Main Office, 438 First Street, Santa Rosa, CA  95401 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Ticor Title Company, whose address is 600 N. Brand Blvd., Suite #610, Glendale, CA  91203 (referred to below as "Trustee").

CONVEYANCE AND GRANT.  For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Contra Costa County, State of California:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF CONTRA COSTA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Parcel One:

Lot 2 of Subdivision Map 7457, in the City of Danville, County of Contra Costa, State of California, filed March 6, 1998, in Book 398 of Maps, at Page 36, Contra Costa County records.

Parcel Two:

Non-exclusive easements and rights of access, use and enjoyment in and to the common area, as defined in those certain Declaration of Covenants, Conditions and Restrictions of Campbell Place, recorded February 18, 1999, Series No. 99-0045866-00, Contra Costa County Records.

APN: 202-410-002

The Real Property or its address is commonly known as  6 Campbell Place, Danville, CA  94526.  The Assessor's Parcel Number for the Real Property is 202-410-002.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938.  In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PERFORMANCE OF A GUARANTY FROM TRUSTOR TO LENDER, AND DOES NOT DIRECTLY SECURE THE OBLIGATIONS DUE LENDER UNDER THE NOTE AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THIS DEED OF TRUST.  THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

TRUSTOR'S REPRESENTATIONS AND WARRANTIES.  Trustor warrants that:  (a) this Deed of Trust is executed at Borrower's request and not at the request of Lender;  (b) Trustor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property;  (c) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Trustor and do not result in a violation of any law, regulation, court decree or order applicable to Trustor;  (d) Trustor has

# DEED OF TRUST
## (Continued)

established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Trustor about Borrower (including without limitation the creditworthiness of Borrower).

**TRUSTOR'S WAIVERS.** Except as prohibited by applicable law, Trustor waives any right to require Lender to (a) make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the Indebtedness, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional Indebtedness; (b) proceed against any person, including Borrower, before proceeding against Trustor; (c) proceed against any collateral for the Indebtedness, including Borrower's collateral, before proceeding against Trustor; (d) apply any payments or proceeds received against the Indebtedness in any order; (e) give notice of the terms, time, and place of any sale of any collateral pursuant to the Uniform Commercial Code or any other law governing such sale; (f) disclose any information about the Indebtedness, Borrower, any collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or (g) pursue any remedy or course of action in Lender's power whatsoever.

Trustor also waives any and all rights or defenses arising by reason of (h) any disability or other defense of Borrower, any other guarantor or surety or any other person; (i) the cessation from any cause whatsoever, other than payment in full, of the Indebtedness; (j) the application of proceeds of the Indebtedness by Borrower for purposes other than the purposes understood and intended by Trustor and Lender; (k) any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise; (l) any statute of limitations in any action under this Deed of Trust or on the Indebtedness; or (m) any modification or change in terms of the Indebtedness, whatsoever, including without limitation, the renewal, extension, acceleration, or other change in the time payment of the Indebtedness is due and any change in the interest rate.

Trustor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against Borrower by the operation of Section 580d of the California Code of Civil Procedure, or otherwise.

Trustor waives all rights and defenses that Trustor may have because Borrower's obligation is secured by real property. This means among other things: (1) Lender may collect from Trustor without first foreclosing on any real or personal property collateral pledged by Borrower. (2) If Lender forecloses on any real property collateral pledged by Borrower: (A) The amount of Borrower's obligation may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price. (B) Lender may collect from Trustor even if Lender, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because Borrower's obligation is secured by real property. These rights and defenses include, but are not limited to, any rights and defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

Trustor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Trustor might otherwise be entitled under state and federal law. The rights and defenses waived include, without limitation, those provided by California laws of suretyship and guaranty, anti-deficiency laws, and the Uniform Commercial Code. Trustor acknowledges that Trustor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender. Trustor further understands and agrees that this Deed of Trust is a separate and independent contract between Trustor and Lender, given for full and ample consideration, and is enforceable on its own terms. Until all Indebtedness is paid in full, Trustor waives any right to enforce any remedy Trustor may have against Borrower's or any other guarantor, surety, or other person, and further, Trustor waives any right to participate in any collateral for the Indebtedness now or hereafter held by Lender.

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Trustor shall strictly perform all of Trustor's obligations under the Guaranty and under this Deed of Trust.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Lender and Trustor agree that Borrower's and Trustor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have

Loan No: 87 000053 06                                                                                                    Page 3

been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Trustor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages

# DEED OF TRUST
## (Continued)

Loan No: 87 000053 06

Page 4

will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Deed of Trust, to the extent compliance with the terms of this Deed of Trust would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Deed of Trust for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to comply with any obligation to maintain Existing Indebtedness in good standing as required below, or to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Deed of Trust:

**Existing Lien.** The lien of this Deed of Trust securing the Indebtedness may be secondary and inferior to the lien securing payment of an existing obligation with an account number of 74566490DA-160 to 1st United Services Credit Union described as: Real property located at 6 Campbell Place, Danville, CA 94526. The existing obligation has a current principal balance of approximately $84,065.00 and is in the original principal amount of $100,000.00. The obligation has the following payment terms: $633.00 per Month. Trustor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

# DEED OF TRUST
**(Continued)**

Loan No: 87 000053 06

Page 5

---

No Modification. Trustor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Deed of Trust by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Trustor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor shall strictly perform all of Trustor's obligations under the Guaranty and Trustor otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

## DEED OF TRUST
### (Continued)

Loan No: 87 000053 06

Page 6

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Borrower fails to make any payment when due under the Note Indebtedness or Trustor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Trustor.

**Default Under the Guaranty.** Failure by Trustor to comply with any term, obligation, covenant or condition contained in the Guaranty.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Trustor or on Borrower's or Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution or termination of Borrower's or Trustor's existence as a going business, the insolvency of Borrower or Trustor, the appointment of a receiver for any part of Borrower's or Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Trustor under the terms of any other agreement between Borrower or Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of

**DEED OF TRUST**
**(Continued)**

sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Contra Costa County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed

**DEED OF TRUST**
**(Continued)**

Loan No: 87 000053 06                                                                                    Page 8

═══════════════════════════════════════════════════════════════════════════════

of Trust and by applicable law.  This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.**  Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.**  Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust.  Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust.  All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust.  Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address.  For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address.  Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.**  Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**ASSUMPTION.**  Notwithstanding anything to the contrary contained in this Note, the Deed of Trust, or any of the other documents relating thereto, Lender and the U.S. Small Business Administration shall consent to the voluntary sale or exchange of the property encumbered by the Deed of Trust by Borrower to a bona-fide third party purchaser.  This consent is conditioned upon Borrower not then being in default under the terms and provisions of this Note, the Deed of Trust, and other documents relating thereto, and upon satisfaction of all of the following conditions precedent: (a) purchaser's formal assumption of the obligations of Borrower under the Note, the Deed of Trust, and the other documents relating thereto: (b) Lender and the U.S. Small Business Administration's reasonable determination that the proposed purchaser, guarantor or guarantors, if any, and the property satisfy all of the then applicable credit review and underwriting standards of Lender and the U.S. Small Business Administration; (c) the execution and delivery to Lender of such documents and instruments as Lender and the U.S. Small Business Administration shall reasonably require to memorialize the transfer and assumption, including, but not limited to, an assumption agreement, loan guarantees, and endorsement(s) to Lender's policy of title insurance; (d) payment to Lender and the U.S. Small Business Administration of an assumption fee equal to one percent (1.000%) of the then outstanding principal balance owing on this Note; and (e) payment to Lender and the U.S. Small Business Administration of its reasonable out-of-pocket costs relating to the transfer and assumption, including, but not limited to, legal fees, title insurance fees, appraisal fees, inspection fees, and environmental consultant's fees.  Upon satisfaction of all of these conditions precedent, Lender and the U.S. Small Business Administration shall fully release Borrower, and any guarantors of Borrower's obligations, from any and all liability arising pursuant to this Note, the Deed of Trust, and the other documents relating thereto.

**DAMAGE OR DESTRUCTION OF IMPROVEMENTS.**  If the Improvements or any part thereof are damaged or destroyed by natural disaster, fire, or by other means, Borrower shall promptly restore the Improvements to their prior condition.  Lender shall not be obligated to make any further disbursements of Loan proceeds until such restoration is completed to Lender's satisfaction.  Any insurance proceeds by reason of such damage or destruction that are received by Lender will be available to Borrower upon presentation of bills covering any labor and material used in restoration provided, in Lender's sole opinion, that sufficient funds are available to complete that restoration.

**CONSENT TO LOAN PARTICIPATION.**  Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender.  Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters.  Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests.  Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests.  Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan.  Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.**  This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust.  No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.**  If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require.  "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Arbitration.**  Trustor and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Deed of Trust or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the financial services rules of J.A.M.S., or its successor in effect at the time the claim is filed, upon request of either party.  No act to take or dispose of any Property shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement.  This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant Article 9 of the Uniform Commercial Code.  Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Property, including any claim to rescind, reform, or otherwise modify any agreement relating to the Property,

**DEED OF TRUST**
**(Continued)**

Loan No: 87 000053 06

Page 9

shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Borrower and Trustor and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Deed of Trust shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Sonoma County, State of California.

**Joint and Several Liability.** All obligations of Borrower and Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor, and all references to Borrower shall mean each and every Borrower. This means that each Trustor signing below is responsible for all obligations in this Deed of Trust.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury.** To the extent permitted by applicable law, all parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Poppy Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means CBR Electric, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of

**DEED OF TRUST**
**(Continued)**

default section of this Deed of Trust.

**Existing Indebtedness.**  The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust.

**Guarantor.**  The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.**  The word "Guaranty" means the guaranty from Trustor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.**  The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled.  The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws.  The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.**  The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.**  The word "Indebtedness" means all obligations of Trustor under the Guaranty, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the obligations under the Guaranty and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.**  The word "Lender" means Poppy Bank, its successors and assigns.

**Note.**  The word "Note" means the promissory note dated August 18, 2018, **in the original principal amount of $4,450,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. NOTICE TO TRUSTOR:  THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.**  The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.  However, should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Personal Property is limited to only those items specifically covered (currently or hereafter) by Coverage A of the standard flood insurance policy issued in accordance with the National Flood Insurance Program or under equivalent coverage similarly issued by a private insurer to satisfy the National Flood Insurance Act (as amended).

**Property.**  The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.**  The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.**  The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.**  The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.**  The word "Trustee" means Ticor Title Company, whose address is 600 N. Brand Blvd., Suite #610, Glendale, CA  91203 and any substitute or successor trustees.

**Trustor.**  The word "Trustor" means Hoan Dang and Diana Dang.

EACH TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND EACH TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.

TRUSTOR:

X _____
Hoan Dang

signed in counter part

X _____
Diana Dang

CERTIFIED TO BE A TRUE AND CORRECT COPY OF SIGNED ORIGINAL
BY: _____
EASTLAND ESCROWS, INC.

Loan No: 87 000053 06

### DEED OF TRUST
### (Continued)

Page 11

═══════════════════════════════════════

### CERTIFICATE OF ACKNOWLEDGMENT

| |
|---|
| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document. |

STATE OF _Calif_____ )

COUNTY OF _Los Angeles_____ ) S S
)

On ___Aug. 23___, 20_18_ before me, _Sherry L. Dominguez, Notary Public_
(here insert name and title of the officer)

personally appeared Hoan Dang ~~and Diana Dang~~, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

> SHERRY L. DOMINGUEZ
> Comm. #2206409
> Notary Public - California
> Los Angeles County
> Comm. Expires Aug 18, 2021

(Seal)

────────────────────────────────

### (DO NOT RECORD)
### REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

CERTIFIED TO BE A TRUE AND
EXACT COPY OF SIGNED ORIGINAL
BY _____

To: _____, Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____.

Date: _____   Beneficiary: _____

By: _____

Its: _____

LaserPro, Ver. 18.1.0.025  Copr. Finastra USA Corporation 1997, 2018.  All Rights Reserved.  - CA  C:\HARLAND\CFI\LPL\G01.FC
TR-4491  PR-98

# Exhibit B

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| James C. Bastian, Jr. - Bar No. 175415<br>SHULMAN BASTIAN FRIEDMAN & BUI LLP<br>100 Spectrum Center Drive, Suite 600<br>Irvine, CA  92618<br>Telephone: (949) 340-3400<br>Facsimile:  (949) 340-3000<br>Email:  jbastian@shulmanbastian.com<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for Debtor* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| In re:<br><br>HOAN DANG and<br>DIANA HONGKHAM DANG,<br><br><br><br>Debtor(s) | CASE NO.:  8:20-bk-11631-TA<br><br>CHAPTER:  7<br><br>**SUMMARY OF AMENDED SCHEDULES,**<br>**MASTER MAILING LIST,**<br>**AND/OR STATEMENTS**<br>**[LBR 1007-1(c)]** |
|---|---|

A filing fee is required to amend Schedules D or E/F (see Abbreviated Fee Schedule on the Court's website www.cacb.uscourts.gov).  A supplemental master mailing list (do not repeat any creditors on the original) is required as an attachment if creditors are being added to the Schedule D or E/F.
Are one or more creditors being added? ☐ Yes ☒ No

The following schedules, master mailing list or statements (check all that apply) are being amended:

☐ Schedule A/B    ☐ Schedule C    ☒ Schedule D    ☐ Schedule E/F    ☐ Schedule G

☐ Schedule H    ☐ Schedule I    ☐ Schedule J    ☐ Schedule J-2    ☐ Statement of Financial Affairs

☐ Statement About Your Social Security Numbers    ☐ Statement of Intention    ☐ Master Mailing List

☒ Other (*specify*)  Declaration About Schedules (Form 106Dec)

I/we declare under penalty of perjury under the laws of the United States that the amended schedules, master mailing list, and or statements are true and correct.

Date:  07/28/2020

_____
Debtor 1 Signature

_____
Debtor 2 (Joint Debtor) Signature (if applicable)

***NOTE***:  It is the responsibility of the Debtor, or the Debtor's attorney, to serve copies of all amendments on all creditors listed in this Summary of Amended Schedules, Master Mailing List, and/or Statements, and to complete and file the attached Proof of Service of Document.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

December 2015                                    Page 1                            **F 1007-1.1.AMENDED.SUMMARY**

| Fill in this information to identify the case: |
| --- |
| Debtor name **Hoan Dang and Diana Hongkham Dang** |
| United States Bankruptcy Court for the: **Central District of California** |
| Case number (*If known*): **8:20-bk-11631-TA** |

☒ Check if this is an amended filing

## Schedule D: Creditors Who Have Claims Secured by Property
## Part 1, to __correct__ the description of the claim for the following:

**Part 1:**  List All Secured Claims

| 2. | List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name. | **Column A**<br>**Amount of claim**<br>Do not deduct the value of collateral. | **Column B**<br>**Value of collateral**<br>**that supports this**<br>**claim** | **Column C**<br>**Unsecured**<br>**portion**<br>If any |
| --- | --- | --- | --- | --- |

**2.2**

**1ˢᵗ United Service Credit Union**
**Attn President or Managing Agent**
Creditor's Name
**PO Box 11746**
Number    Street
**Pleasanton, CA 94588**
City    State    Zip Code

**Who owes the debt? Check one.**

☐ Debtor 1 only
☐ Debtor 2 only
☒ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☒ Check if this claim is for a community debt

**Date debt was incurred**

**Describe the property that secures the claim:**

**First deed of trust against 6 Campbell Place, Danville, CA**

**As of the date you file,** the claim is: Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply
☒ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

**Last 4 digits of account number**

$79,039.24    $1,790,000.00

**2.6**

**Poppy Bank**
**Attn Kevin Downey VP Loan Risk Officer**
Creditor's Name
**438 First St Ste 200**
Number    Street
**Santa Rosa, CA 95401**
City    State    Zip Code

**Who owes the debt? Check one.**

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☒ At least one of the debtors and another

☒ Check if this claim is for a community debt

**Date debt was incurred**

**Describe the property that secures the claim:**

**Second deed of trust on real property located at 6 Campbell Place, Danville, CA; guaranty of business debt related to CBR Electric, Inc.**

**As of the date you file,** the claim is: Check all that apply
☒ Contingent
☒ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply
☒ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

**Last 4 digits of account number**

$4,500,000.00    $1,790,000.00

**Fill in this information to identify your case:**

| | | | | |
|---|---|---|---|---|
| Debtor 1 | Hoan Dang | | | |
| | First Name | Middle Name | Last Name | |
| Debtor 2 | Diana Hongkham Dang | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name | |

United States Bankruptcy Court for the: Central District of California

Case number: 8:20-bk-11631-TA
(If known)

☑ Check if this is an
amended filing

Official Form 106Dec

# Declaration About an Individual Debtor's Schedules

12/15

If two married people are filing together, both are equally responsible for supplying correct information.

You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Sign Below

**Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?**

☑ No

☐ Yes. Name of person_____. Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.

✗ _____    ✗ _____
Signature of Debtor 1    Signature of Debtor 2

Date 07/28/2020    Date _____
    MM / DD / YYYY        MM / DD / YYYY

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
100 Spectrum Center Drive, Suite 600, Irvine, CA  92618

A true and correct copy of the foregoing document entitled (*specify*): **SUMMARY OF AMENDED SCHEDULES, MASTER MAILING LIST, AND/OR STATEMENTS [LBR 1007-1(c)]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____07/31/2020_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date*) _07/31/2020_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Secured Creditor: Poppy Bank; Attn: Kevin Downey, VP Loan Risk Officer; 438 First Street, Suite 200; Santa Rosa, CA 95401

Additional Notice for Secured Creditor: Poppy Bank; Attn: Joan Earhart, SVP & SBL Regional Mgr.; 3240 El Camino Real Ste 100; Irvine, CA 92602

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 07/31/2020 | Erlanna Lohayza | /s/ Erlanna Lohayza |
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

*December 2015*                                    Page 2                              **F 1007-1.1.AMENDED.SUMMARY**

## NEF SERVICE LIST

- **Attorney for Debtors**:  James C Bastian     jbastian@shulmanbastian.com
- **Attorney for Trustee**: Arturo M Cisneros     arturo@mclaw.org
- **Attorney for Poppy Bank**:  Mitchell B Greenberg     mgreenberg@abbeylaw.com, mmeroney@abbeylaw.com
- **Chapter 7 Trustee**: Karen S Naylor (TR)     alane@ringstadlaw.com, knaylor@IQ7technology.com; ecf.alert+Naylor@titlexi.com
- **Interested Party**: Ambrish B Patel     apatelEI@americaninfosource.com
- **Attorney for OneSource Distributors, LLC**: Pamela J Scholefield     pam@construction-laws.com
- **Attorney for Trustee**: Nathan F Smith     nathan@mclaw.org, CACD_ECF@mclaw.org; mcecfnotices@ecf.courtdrive.com; cvalenzuela@mclaw.org
- **Interested Party**:  United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov
- **Attorney for 1st United Service Credit Union**:  Reilly D Wilkinson     rwilkinson@scheerlawgroup.com

# Exhibit C

## DECLARATION OF EXPERT WITNESS IN SUPPORT OF
## MOTION FOR ORDER DETERMINING VALUE OF COLLATERAL

I, <u>T. Daisy Singh</u>                                    declare:

1. I am over 18 years of age, and I am qualified to testify as an expert witness in my capacity as a:

   ☒ Licensed Residential Property Appraiser with license no. <u>AR006647/ CERTIFIED APPRAISER</u>.

   ☐ Other: _____

   _____

2. Attached as Exhibit A to this declaration, is my report, which discloses all the data that I have used in forming my opinion.

3. My opinion of the value of the Collateral is $ <u>1,700,000.00</u>       as of *(applicable date)* <u>04/16/2020</u>.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

**T Daisy Singh**   Digitally signed by T Daisy Singh
DN: cn=T Daisy Singh, o=Alpha RE
Appraisal Servive, ou,
email=areas2@sbcglobal.net, c=US
Date: 2020.07.27 13:16:48 -07'00'

*Signature*

T. Daisy Singh
*Printed Name*

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

*June 2013*                    Page 7                    **F 3012-1.MOTION.VALUATION**

# EXHIBIT A

# APPRAISAL REPORT

of

Single Family House

**at**

6 Campbell Pl

Danville, CA 94526-2949

**As Of:**

04/16/2020

**Prepared For:**

RIMSCentral
Poppy Bank
438 First Street
Santa Rosa, CA 95401

**Prepared By:**

T. Daisy Singh, AR006647
T. Daisy Singh
4847 Hopyard Rd Ste 4-384
Pleasanton, CA 94588

File No. 20-000912-01-1
Loan No 0

## Exterior-Only Inspection Residential Appraisal Report

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

### SUBJECT

| Property Address 6 Campbell Pl | City Danville | State CA Zip Code 94526-2949 |
|---|---|---|

Borrower CBR Electric Inc    Owner of Public Record   Dang Hoan / Dang Diana   -   County Contra Costa

Legal Description T7457 L2

Assessor's Parcel # 202-410-002-2    Tax Year 2019    R.E. Taxes $ 14,211

Neighborhood Name Campbell Place    Map Reference EXTERIOR    Census Tract 3462.04

Occupant  X Owner  Tenant  Vacant Special Assessments $  0   X PUD  HOA $ 135   per year X per month

Property Rights Appraised  X Fee Simple  Leasehold  Other (describe)

Assignment Type  Purchase Transaction  Refinance Transaction  X Other (describe) Foreclosure

Lender/Client Poppy Bank    Address 438 First Street, Santa Rosa, CA 95401

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?  Yes  X No

Report data source(s) used, offering price(s), and date(s).  Paragon5#

### CONTRACT

I  did  did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract or why the analysis was not performed.

Contract Price $    Date of Contract    Is the property seller the owner of public record?  Yes  No  Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?  Yes  No

If Yes, report the total dollar amount and describe the items to be paid.

### NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|
| Location  Urban  X Suburban  Rural | Property Values  Increasing  X Stable  Declining | | | PRICE | AGE | One-Unit | 65 % |
| Built-Up  X Over 75%  25-75%  Under 25% | Demand/Supply  Shortage  X In Balance  Over Supply | | | $ (000) | (yrs) | 2-4 Unit | 5 % |
| Growth  Rapid  X Stable  Slow | Marketing Time  X Under 3 mths  3-6 mths  Over 6 mths | | | 900 Low | 20 | Multi-Family | 5 % |
| Neighborhood Boundaries  Blackhawk Rd/ north; Old Blackhawk Rd/ east; Camino Tassajara/ south; Greenbrook Rd/ | | | | 1,900 High | 50 | Commercial | 10 % |
| west. | | | | 1,700 Pred. | 30 | Other open | 15 % |

Neighborhood Description  Subject is located in a mixed use area consisting predominantly of single family houses offering varying ages, designs & appeal. Additional uses include Puds, apartments, multi-family buildings & non-detrimental retail/commercial use located along major thoroughfares. All services, schools, shopping, public transport & freeway access are in 1 mile radius. Commute to major work centers is between 10-90 minute commute.

Market Conditions (including support for the above conclusions)  Market Conditions Conclusions noted above in the "housing trends" section represent an analysis of properties that are competitive with the subject property.  See attached 1004MC, graphs, and tables for supporting information.

### SITE

Dimensions  See Plat Map (attached)    Area  11700 sf    Shape  irregular    View  N;Res;Mtn

Specific Zoning Classification  P-1    Zoning Description  single family residential/ planned development

Zoning Compliance  X Legal  Legal Nonconforming (Grandfathered Use)  No Zoning  Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?  X Yes  No If No, describe.

| Utilities Public Other (describe) | | | Public Other (describe) | Off-site Improvements--Type | Public | Private |
|---|---|---|---|---|---|---|
| Electricity X | | Water | X | Street Asphalt | X | |
| Gas X | | Sanitary Sewer | X | Alley None | | |

FEMA Special Flood Hazard Area  Yes X No FEMA Flood Zone X    FEMA Map # 06013C0455G    FEMA Map Date 03/21/2017

Are the utilities and/or off-site improvements typical for the market area?  X Yes  No If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?  Yes X No If Yes, describe.

No adverse site factors noted. See Preliminary Title Report for Easements of Record as Title Report was not made available for review. Appraiser cannot guarantee that property is free of encroachments or easements and recommends client review title report. Appraiser has not checked land records for recorded easements and has reported ONLY apparent easements, encroachments and other apparent adverse conditions (when applicable). Site dimensions on Property Profile Page 3.

Source(s) Used for Physical Characteristics of Property  Appraisal Files X MLS X Assessment and Tax Records  Prior Inspection X Property Owner

X Other (describe)  builder floor plan    Data Source(s) for Gross Living Area  mls

### IMPROVEMENTS

| General Description | | General Description | | Heating / Cooling | | Amenities | | Car Storage | |
|---|---|---|---|---|---|---|---|---|---|
| Units X One  One with Accessory Unit | | X Concrete Slab  Crawl Space | X | FWA  HWBB | X | Fireplace(s)# 2 | | None | |
| # of Stories 2 | | Full Basement  Finished | | Radiant | | Woodstove(s) # 0 | X | Driveway # of Cars 3 | |
| Type X Det.  Att.  S-Det./End Unit | | Partial Basement  Finished | | Other | X | Patio/Deck conc | X | Driveway Surface Concrete | |
| X Existing  Proposed  Under Const. | | Exterior Walls Wood/stucco/average | X | Central Air Conditioning | X | Porch entry | X | Carport # of Cars 0 | |
| Design (Style) contemporary | | Roof Surface Tile/average | X | Individual | | Fence wood | X | Attached  Detached | |
| Year Built 1998 | | Gutters & Downspouts Gal.Iron/avg. | X | Other none | | Other PV system | X | Built-in | X |
| Effective Age (Yrs) 10 | | Window Type Dual Pane/average | X | Fuel gas | | | | | |

Appliances X Refrigerator X Range/Oven X Dishwasher X Disposal  Microwave  Washer/Dryer  Other (describe)

Finished area above grade contains:  10 Rooms  5 Bedrooms  3.1 Bath(s)  3,873 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.)  2 fpls, entry porch, concrete patios, walkways, driveway, fenced yards, sprinklers, lights, tile roof, 3 car garage & pool/spa. Owned PV system. House has access to public power grid.

Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.).  C3;This report is based on extraordinary assumptions that house in good condition. GLA in tax records appear to be incorrect. Appraiser  was provided by additional information, including builder's brochure that indicates correct GLA. Appraiser deems information to be reliable and no guarantees. Should a full inspection be completed on subject house and information gathered indicate any positive or negative attributes, it may change the current "as is" value range of this house.

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?  Yes X No

If Yes, describe  House appears to be occupied at time of inspection and as such it is assumed that utilities are on and operational. It is assumed no functional or physical inadequacies are noted. Appraiser only conducted visual inspection/reporting on observed condition(s). Appraiser is NOT a qualified building/house inspector. Borrower may not rely on this report for structural conditions that may exist and is encouraged to obtain any warranted reports from appropriate professionals.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?  X Yes  No If No, describe

Freddie Mac Form 2055   March 2005

Fannie Mae  Form 2055  March 2005

**Exterior-Only Inspection Residential Appraisal Report**

| There are | 2 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ | 1,399,000 | to $ | 1,745,000 | . |
| There are | 20 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ | 930,000 | to $ | 1,935,000 | . |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 6 Campbell Pl | 26 Campbell Pl | | 70 Barrons Pl | | 25 Barons Pl | |
| | Danville, CA 94526-2949 | Danville, CA 94526 | | Danville, CA 94526 | | Danville, CA 94526 | |
| Proximity to Subject | | 0.08 miles NE | | 0.46 miles W | | 0.56 miles W | |
| Sale Price | $ | $ | 1,750,000 | $ | 1,920,000 | $ | 1,523,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 499.86 sq. ft. | | $ 465.12 sq. ft. | | $ 368.94 sq. ft. | |
| Data Source(s) | | Paragon5# Mls40859342;DOM 8 | | Paragon5# Mls40892971;DOM 4 | | Paragon5# Mls40876790;DOM 102 | |
| Verification Source(s) | | Doc# 076757 LP: $1699000 Realist | | Doc# 036247 LP: $1899000 Realist | | Doc# 223802 LP: $1750000 Realist | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | Conv;0 | | Conv;0 | | Conv;0 | |
| Date of Sale/Time | | s05/19;c05/19 | | s02/20;c02/20 | | s12/19;c12/19 | |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 11700 sf | 17200 sf | 0 | 11000 sf | 0 | 14875 sf | 0 |
| View | N;Res;Mtn | N;Res;Mtn | | N;Res;Mtn | | N;Res;Mtn | |
| Design (Style) | DT2;contemporary | DT2;contemporary | | DT2;contemporary | | DT2;contemporary | |
| Quality of Construction | Q3 | Q3 | | Q3 | | Q3 | |
| Actual Age | 22 | 21 | 0 | 31 | 0 | 28 | 0 |
| Condition | C3 | C2 | -100,000 | C2 | -100,000 | C3 | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 10  5  3.1 | 10  5  4.0 | -5,000 | 10  4  3.2 | -5,000 | 10  5  3.1 | |
| Gross Living Area | 3,873 sq. ft. | 3,501 sq. ft. | 0 | 4,128 sq. ft. | 0 | 4,128 sq. ft. | 0 |
| Basement & Finished Rooms Below Grade | 0sf | 0sf | | 0sf | | 0sf | |
| Functional Utility | good | good | | good | | good | |
| Heating/Cooling | fau / cac | fau / cac | | fau / cac | | fau / cac | |
| Energy Efficient Items | PV system owned | PV system owned | | title 24 | | PV system owned | |
| Garage/Carport | 3gbi3dw | 3gbi3dw | | 3gbi3dw | | 3gbi3dw | |
| Porch/Patio/Deck | porch,patio,fence | porch,patio,fence | | porch,patio,fence | | porch,patio,fence | |
| Other Item | pool+spa | none | +50,000 | pool+spa | | pool+spa | |
| Net Adjustment (Total) | | + X - | $ -55,000 | + X - | $ -105,000 | +  - | $ 0 |
| Adjusted Sale Price of Comparables | | Net Adj: -3% Gross Adj: 9% | $ 1,695,000 | Net Adj: -5% Gross Adj: 5% | $ 1,815,000 | Net Adj: 0% Gross Adj: 0% | $ 1,523,000 |

I  X did    did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research  did  X  did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)  Tax Records/Mls
My research  did  X  did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)  Tax Records/Mls
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | $0 | $0 | $0 | $0 |
| Data Source(s) | Tax Records/Paragon5 | Tax Records/Paragon5 | Tax Records/Paragon5 | Tax Records/Paragon5 |
| Effective Date of Data Source(s) | 04/16/2020 | 04/16/2020 | 04/16/2020 | 04/16/2020 |

Analysis of prior sale or transfer history of the subject property and comparable sales  None. Subject has not been listed, sold or transfers in past 36 months. Subject is not currently listed for sale/ public records. Prior sales/transfer information for comps are noted above/ if available on county records. Credits/ concessions may or may not exist with comps/ no adjustments noted for credit/ concessions as they DO NOT affect market value.

Summary of Sales Comparison Approach  Comps are physically, locationally, functionally most similar to subject. 6 sales reviewed; comps selected based on location and GLA. C1- C4 are closed sales. C4 is a new listing with extended marketing time as it was had aggressive initial list price. GLA adjustments: $150sf per 10% differential; Full Bath/ $10000; Half Bath/ $5000.  C1-3 have similar GLA (in 10% range). C4 is a larger house; C6 is considerably smaller house/ bath utility adjustment is included in the size adjustment. C1 is a dated sale and is displayed as it is on subject's street; no market change adjustment noted as market is indicating a stable trend. Comps bracket subject property in all areas of comparison. Adjustments made based on county record/ mls comments & reflect net contributory value of improvements relative to subject house. All comps given similar consideration as they all offer contributory value and support subject's valuation; most weight given to closed sales as they best represent market pricing. Appraised value supported by displayed comps and is within SP and adjusted value ranges of displayed comps.

Indicated Value by Sales Comparison Approach $  1,700,000

Indicated Value by: Sales Comparison Approach $  1,700,000  Cost Approach (if developed) $  360,000  Income Approach (if developed) $

Most weight given to SCA/ best reflect current market trends. 'Address reported is according to USPS as required by UAD format. Title company, city or county address may/may not match USPS records'  Current market performing strongly and it is projected to continue based on low inventory (supply) and continued high demand and strong consumer confidence.

This appraisal is made  X  *as is,*    subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,    subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or    subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  No appraisal conditions. Please note Statement of Limiting Conditions & Certifications. Appraiser's signature is digital and authentic.

Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$  1,700,000 , as of  04/16/2020 , which is the date of inspection and the effective date of this appraisal.

File No.   20-000912-01-1
Loan No   0

## Exterior-Only Inspection Residential Appraisal Report

**ADDITIONAL COMMENTS**

IMPORTANT PLEASE READ - The client should review this report in its entirety to gain a full awareness of the subject property, its market environment and to account for identified issues in their business decisions. This appraisal report includes; comments, observations, exhibits, maps and addenda that are necessary for the reader to comprehend the relevant characteristics of the subject property. The "Clarification of Scope of Work" provides specifics as to the development of the appraisal along with exceptions that may have been necessary to complete a credible report. The Housing Market Analysis addendum provides an overview of the market area, economic and demographic indicators, trends and market summary. Any "critical issues" have been communicated in the transmittal letter and or the body of the report or addenda. This report contains 35 pages.

Cost approach was not developed for this assignment as there is insufficient data to create credible & meaningful results. Additionally, subject is located in a predominantly developed area where lot sales are very limited and accrued physical depreciation is difficult to accurately measure.

Appraiser only provides an opinion of value. An appraisal report is not a substitute for inspections by qualified professionals in real estate mechanics. It is the readers responsibility to hire appropriate inspectors to ascertain the mechanical issues and/or defects pertaining to the structure. The appraiser is not a qualified home/environmental inspector and assumes no responsibility for any deficiencies that are not visually apparent or disclosed to the appraiser. Appraisal report does not guarantee that house is free of defects/environmental or microbial issues. Houses built prior to 1978 may contain lead based paint.

See sketch attached for square footage calculations and room placements. Sketch is not to scale. Sketch is attached to assist visualizing property appraised. Measurements, placement of wall s& living area calculations are for informational purposes only. Accuracy is not guaranteed though believed to be reliable.

"TO WHOM IT MAY CONCERN"
Digital signature(s) have been applied to this report by the appraiser. All reports issued by this office have digital signature(s) and the reports are transmitted via Electronic Data Exchange and the reports are issued in "locked" position or "view only" format by the appraiser. As such only I, the appraiser, T. Daisy Singh, am the sole individual who can amend or change this appraisal report in any way, including the signature(s).
If you should have any concerns regarding the authenticity of this report or the digital signature(s), please do not hesitate to contact me at my office by telephone at 925.918.1996 or by email at areas2@sbcglobal.net.
Each of the comparable sales displayed were viewed by the appraiser. Some of the comparable sale photos may or may not have been extracted from the MLS. If MLS photos are displayed it may be that they better represent the comparable property during the sale period which is the time frame of the comparison to the subject.

Scope of work completed was appropriate for named client & any intended uses, but may not be appropriate for other 3rd party users, such as borrower or property owners. Client may use this report for a single loan determination only. This appraisal cannot be used for FHA loan.

The Intended User of this appraisal report is the Lender/Client. The Intended Use is to evaluate the property that is the subject of this appraisal for mortgage finance transaction, subject to the stated Scope of Work, purpose of the appraisal, reporting requirements of this appraisal report form, and Definition of Market Value. NO ADDITIONAL INTENDED USERS ARE IDENTIFIED BY THE APPRAISER. Also see addendum page titled " Appraisers Disclaimer/ Disclosure Commentary Page"
•••••••••••••••••••••APPRAISER'S BREA LICENSE AND E/O DECLARATION PAGE SHOULD NOT BE PROVIDED TO 3RD PARTY USERS OF REPORT. AT THE ADVISE OF THE POLICY ISSUER, AND LEGAL COUNSEL THE LENDER/ CLIENT SHOULD NOT DISTRIBUTE THE E/O DECLARATION PAGE TO ANY 3rd PARTIES OR UNINTENDED USERS. •••••••••••••••••••••

**COST APPROACH**

### COST APPROACH TO VALUE (not required by Fannie Mae.)

Provide adequate information for the lender/client to replicate your cost figures and calculations.
Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   Land value cannot be determined by lot sales as subject is in developed area with NO lot sales. Site value cannot be relied upon for insurance purposes. Abstracting value of improvement (from appraised value) minus site value is NOT reliable method to determine property insurance adequate to protect improvement. Appraiser is not an insurance adjuster & recommends lender ascertain costs for insurance purposes from appropriate insurance representative. Also see comments above.

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | =$ | 360,000 |
|---|---|---|---|---|
| Source of cost data | Dwelling | 3,873 Sq. Ft. @ $ | =$ | |
| Quality rating from cost service   Effective date of cost data | | Sq. Ft. @ $ | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | | |
| Subject is located in a developed area with zero lot sales and as such lot value | Garage/Carport | Sq. Ft. @ $ | =$ | |
| cannot be assessed by lot sales and for benefit of the client the land value (if | Total Estimate of Cost-new | | =$ | |
| indicated) is an estimate based on abstraction and supported by the tax | Less    Physical    Functional    External | | | |
| assessor's records, a acceptable method when land sales are not available in a | Depreciation | | =$ ( | ) |
| neighborhood. | Depreciated Cost of Improvements | | =$ | |
| Land value provided for benefit of client and is from tax records | "As-is" Value of Site Improvements | | =$ | |
| Estimated Remaining Economic Life (HUD and VA only)  85   Years | Indicated Value By Cost Approach | | =$ | 360,000 |

**INCOME**

### INCOME APPROACH TO VALUE (not required by Fannie Mae.)

| Estimated Monthly Market Rent $ | X Gross Multiplier | =$ | Indicated Value by Income Approach |
|---|---|---|---|

Summary of Income (including support for market rent and GRM)  Income approach is not developed as predominant occupancy in this area is typically by owner & as such the lack of rental comparables within subject's market area.

**PUD INFORMATION**

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes  X No  Unit type(s)  X Detached  ☐ Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal Name of Project  Campbell Place

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source |

Was the project created by the conversion of existing building(s) into a PUD?  ☐ Yes    No  If Yes, date of conversion.
Does the project contain any multi-dwelling units?  ☐ Yes    No  Data source.
Are the units, common elements, and recreation facilities complete?  ☐ Yes    No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes    No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.   Common area maintenance

Alpha RE Appraisal Service 925.200.0070
EXTRA COMPARABLES 4-5-6

File No.    20-000912-01-1
Loan No    0

| | |
|---|---|
| Borrower | CBR Electric Inc |
| Property Address | 6 Campbell Pl |
| City | Danville | County | Contra Costa | State | CA | Zip Code | 94526-2949 |
| Lender/Client | Poppy Bank | Address | 438 First Street, Santa Rosa, CA 95401 |

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 6 Campbell Pl | 395 Edinburgh Cir | | 5 Edinburgh Pl | | | |
| | Danville, CA 94526-2949 | Danville, CA 94526 | | Danville, CA 94526 | | | |
| Proximity to Subject | | 0.81 miles W | | 0.57 miles NW | | | |
| Sale Price | $ | $ 1,935,000 | | $ 1,745,000 | | $ | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 443.91 sq. ft. | | $ 577.81 sq. ft. | | $ sq. ft. | |
| Data Source(s) | | Paragon5# Mls40896755;DOM 7 | | Paragon5# Mls40901886;DOM 209 | | | |
| Verification Source(s) | | Doc# LP: $1898000 Realist | | LP: $1987000 Realist | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | ArmLth | | Listing | | | |
| Concessions | | Conv;0 | | none;0 | | | |
| Date of Sale/Time | | s04/20;c04/20 | | Active | | | |
| Location | N;Res; | N;Res; | | N;Res; | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | | |
| Site | 11700 sf | 17400 sf | 0 | 13300 sf | 0 | | |
| View | N;Res;Mtn | N;Res;Mtn | | N;Res;Mtn | | | |
| Design (Style) | DT2;contemporary | DT2;contemporary | | DT2;contemporary | | | |
| Quality of Construction | Q3 | Q3 | | Q3 | | | |
| Actual Age | 22 | 31 | 0 | 25 | 0 | | |
| Condition | C3 | C2 | -100,000 | C2 | -100,000 | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 10  5  3.1 | 10  5  4.1 | 0 | 10  4  3.0 | 0 | | |
| Gross Living Area | 3,873 sq. ft. | 4,359 sq. ft. | -73,000 | 3,020 sq. ft. | +128,000 | sq. ft. | |
| Basement & Finished | 0sf | 0sf | | 0sf | | | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | good | good | | good | | | |
| Heating/Cooling | fau / cac | fau / cac | | fau / cac | | | |
| Energy Efficient Items | PV system owned | PV system owned | | PV system owned | | | |
| Garage/Carport | 3gbi3dw | 3gbi3dw | | 3gbi3dw | | | |
| Porch/Patio/Deck | porch,patio,fence | porch,patio,fence | | porch,patio,fence | | | |
| Other Item | pool+spa | outdoor kit/tennis | 0 | pool+spa | | | |
| | | | | market negogiations | 0 | | |
| Net Adjustment (Total) | | [ ] + [X] - | $ -173,000 | [X] + [ ] - | $ 28,000 | [ ] + [ ] - | $ |
| Adjusted Sale Price | | Net Adj: -9% | | Net Adj: 2% | | Net Adj: 0% | |
| of Comparables | | Gross Adj: 9% | $ 1,762,000 | Gross Adj: 13% | $ 1,773,000 | Gross Adj: 0% | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | $0 | $0 | $0 | |
| Data Source(s) | Tax Records/Paragon5 | Tax Records/Paragon5 | Tax Records/Paragon5 | |
| Effective Date of Data Source(s) | 04/16/2020 | 04/16/2020 | 04/16/2020 | |

Analysis of prior sale or transfer history of the subject property and comparable sales

Summary of Sales Comparison Approach

SALES COMPARISON ANALYSIS

File No.    20-000912-01-1
Loan No    0

### Exterior-Only Inspection Residential Appraisal Report

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

USDA Appraisal Service 925.980.0078

Exterior-Only Inspection Residential Appraisal Report

File No.    20-000912-01-1
Loan No    0

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

Date File  Appraisal Service LLC  20-000912

File No.   20-000912-01-1

## Exterior-Only Inspection Residential Appraisal Report

Loan No.   0

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

### SUPERVISORY APPRAISER'S CERTIFICATION: The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature  _TD C/L_ | Signature |
| Name   T. Daisy Singh | Name |
| Company Name   Alpha RE Appraisal Service 925.200.0070 | Company Name |
| Company Address   4847 Hopyard Rd Ste 4-384 | Company Address |
| Pleasanton, CA 94588 | |
| Telephone Number   925.200.0070 | Telephone Number |
| Email Address   areas2@sbcglobal.net  CC areas22014@gmail.com | Email Address |
| Date of Signature and Report   04/17/2020 | Date of Signature |
| Effective Date of Appraisal   04/16/2020 | State Certification # |
| State Certification #   AR006647 | or State License # |
| or State License # | State |
| or Other (describe)   State # | Expiration Date of Certification or License |
| State   CA | |
| Expiration Date of Certification or License   01/20/2021 | |
| | SUBJECT PROPERTY |
| ADDRESS OF PROPERTY APPRAISED | |
| 6 Campbell Pl | ☐ Did not inspect exterior of subject property |
| Danville, CA 94526-2949 | ☐ Did inspect exterior of subject property from street |
| | Date of Inspection |
| APPRAISED VALUE OF SUBJECT PROPERTY $   1,700,000 | |
| LENDER/CLIENT | |
| Name   RIMSCentral | COMPARABLE SALES |
| Company Name   Poppy Bank | |
| Company Address   438 First Street | ☐ Did not inspect exterior of comparable sales from street |
| Santa Rosa, CA 95401 | ☐ Did inspect exterior of comparable sales from street |
| Email Address | Date of Inspection |

| Borrower | CBR Electric Inc | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6 Campbell Pl | | | | | | |
| City Danville | | County | | Contra Costa | State CA | Zip Code | 94526-2949 |
| Lender/Client Poppy Bank | | | | Address 438 First Street, Santa Rosa, CA 95401 | | | |



AERIAL WEST VIEW DANVILLE

File No. 20-000912-01-1
Loan No. 0

Subject
6 Campbell Pl
Danville, CA 94526-2949

BUILD
FAX
PROPERTY HISTORY

## SUBJECT PROPERTY PERMIT HISTORY

File No.  20-000912-01-1
Loan No 0

Borrower   CBR Electric Inc
Property Address  6 Campbell Pl
City  Danville                County                          State   CA   Zip Code   94526-2949
Lender/Client   Poppy Bank                  Address   438 First Street, Santa Rosa, CA 95401

**SUBJECT:** 6 CAMPBELL PL, DANVILLE, CA 94526-2949                Report Date: _____ 04/17/2020

### THE SOURCE FOR THE DATA FOUND IN THIS REPORT IS THE FOLLOWING PERMITTING AUTHORITY

Town of Danville, Building Department
510 La Gonda Way
Danville, CA 94526
925-314-3330
http://www.ci.danville.ca.us/
The data received from this source runs from:          The data received from this source runs from:
02/25/2000 through 02/29/2020
Information on construction activity occuring outside of this range may or may not be represented here.

| TEN MOST RECENT PERMITS | | | |
|---|---|---|---|
| Permit Number | Date | Valuation | Description |
| M13-015344 | 09/25/2013<br><br>Status: FINALED | $18,500 | Permit Type: MISC-ROOF MOUNTED PHOTOVOLTAIC 5.56 KW-PHOTOVOLTAIC<br>Contractor: Green Stock Solar |
| M11-012387 | 03/03/2011<br><br>Status: FINALED | | Permit Type: MISC-Window Replacement<br>Contractor: Green Stock Solar |
| P06-000658 | 10/10/2006<br><br>Status: FINALED | | Permit Type: POOL-POOL/SPA<br>Contractor: Green Stock Solar |
| W06-000318 | 10/10/2006<br><br>Status: FINALED | | Permit Type: WALL<br>Contractor: Green Stock Solar |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

File No. 20-000912-01-1
Loan No 0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | CBR Electric Inc | | | | | | |
| Property Address | 6 Campbell Pl | | | | | | |
| City Danville | | County | Contra Costa | State | CA | Zip Code | 94526-2949 |
| Lender/Client Poppy Bank | | | Address 438 First Street, Santa Rosa, CA 95401 | | | | |

Builder Floor Plan



Rent Upgrade Plan

File No.    20-000912-01-1
Loan No    0

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower   CBR Electric Inc | | | | | | |
| Property Address  6 Campbell Pl | | | | | | |
| City  Danville | County | Contra Costa | | State   CA | Zip Code | 94526-2949 |
| Lender/Client  Poppy Bank | | Address   438 First Street, Santa Rosa, CA 95401 | | | | |

Our house is Plan 1 with 5 bedrooms and 3 1/2 Bath approximately 3,873 square feet.

See attach for the floor plan.

Upgrade.

1. In-ground swimming pool with Spa and solar.
2. Electric Solar power 5.2 KW
3. Upgrade Windows with low-E3
4. Subzero Fridge
5. Corian countertops, kitchen island top and backplash

If you need additional information please call me at 408-834-9383.

Thanks,
Hoan Dang
408-834-9383

Comparable File Front Page 1

| | | | File No. | 20-000912-01-1 |
|---|---|---|---|---|
| | | | Loan No | 0 |

| Borrower | | CBR Electric Inc | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6 Campbell Pl | | | | | | |
| City | Danville | County | Contra Costa | | State | CA Zip Code | 94526-2949 |
| Lender/Client | Poppy Bank | Address | 438 First Street, Santa Rosa, CA 95401 | | | | |

## 6 Campbell Pl, Danville, CA 94526-2949, Contra Costa County

| Beds | Bldg Sq Ft | Lot Sq Ft | Sale Price |
|---|---|---|---|
| 4 | 3,685 | 11,700 | $800,000 |
| Baths | Yr Built | Type | Sale Date |
| 3 | 1998 | SFR | 10/25/1999 |

### OWNER INFORMATION

| | | | |
|---|---|---|---|
| Owner Name | Dang Hoan | Tax Billing Zip | 94526 |
| Owner Name 2 | Dang Diana | Tax Billing Zip+4 | 2949 |
| Tax Billing Address | 6 Campbell Pl | Owner Occupied | Yes |
| Tax Billing City & State | Danville, CA | | |

### LOCATION INFORMATION

| | | | |
|---|---|---|---|
| School District | San Ramon Vly | Census Tract | 3462.04 |
| Community College District | Contra Costa | Property Carrier Route | C024 |

### TAX INFORMATION

| | | | |
|---|---|---|---|
| APN | 202-410-002-2 | Tax Area | 16002 |
| Exemption(s) | Homeowner | Lot Number | 2 |
| % Improved | 70% | | |
| Legal Description | T7457 L2 | | |

### ASSESSMENT & TAX

| Assessment Year | 2019 | 2018 | 2017 |
|---|---|---|---|
| Assessed Value - Total | $1,182,313 | $1,159,132 | $1,136,405 |
| Assessed Value - Land | $359,949 | $352,892 | $345,973 |
| Assessed Value - Improved | $822,364 | $806,240 | $790,432 |
| YOY Assessed Change ($) | $23,181 | $22,727 | |
| YOY Assessed Change (%) | 2% | 2% | |

| Tax Year | Total Tax | Change ($) | Change (%) |
|---|---|---|---|
| 2017 | $13,192 | | |
| 2018 | $13,681 | $489 | 3.71% |
| 2019 | $14,211 | $530 | 3.87% |

| Special Assessment | Tax Amount |
|---|---|
| Mosquito & Vector | $4.74 |
| Emergency Med A | $3.94 |
| Cccsd Sewer Chg | $598.00 |
| Fed Stormwater A-4 | $30.00 |
| Sfbra Pcl Tax | $12.00 |
| Danville St Lt | $305.80 |
| Eastbay Trails Lld | $5.44 |
| Srvusd Pcltax 16-A | $144.00 |
| Total Of Special Assessments | $1,103.92 |

### CHARACTERISTICS

| | | | |
|---|---|---|---|
| Land Use - CoreLogic | SFR | Total Rooms | 12 |
| Land Use - County | Single Family Detached With Ma | Bedrooms | 4 |
| Lot Acres | 0.2686 | Total Baths | 3 |
| Lot Area | 11,700 | Full Baths | 2 |
| Year Built | 1998 | Half Baths | 1 |
| Effective Year Built | 1999 | Parking Type | Type Unknown |
| Building Sq Ft | 3,685 | Garage Sq Ft | 712 |
| Stories | 2 | Pool | Pool |

### SELL SCORE

| | | | |
|---|---|---|---|
| Rating | Very Low | Value As Of | 2020-04-13 23:28:19 |

**Property Details** Courtesy of DAISY SINGH, MLS Listings

Generated on: 04/17/20

The data within this report is compiled by CoreLogic from public and private sources. The data is deemed reliable, but is not guaranteed. The accuracy of the data contained herein can be independently verified by the recipient of this report with the applicable county or municipality.

Page 1/3

Property Profile From Realist R2

File No.   20-000912-01-1
Loan No   0

| | |
|---|---|
| Borrower | CBR Electric Inc |
| Property Address | 6 Campbell Pl |

| City | Danville | County | | Contra Costa | State | CA | Zip Code | 94526-2949 |
|---|---|---|---|---|---|---|---|---|
| Lender/Client | Poppy Bank | | | Address | 438 First Street, Santa Rosa, CA 95401 | | | |

Sell Score          302

**ESTIMATED VALUE**

| | | | |
|---|---|---|---|
| RealAVM™ | $1,765,900 | Confidence Score | 76 |
| RealAVM™ Range | $1,642,287 - $1,889,513 | Forecast Standard Deviation | 7 |
| Value As Of | 04/04/2020 | | |

(1) RealAVM™ is a CoreLogic® derived value and should not be used in lieu of an appraisal.

(2) The Confidence Score is a measure of the extent to which sales data, property information, and comparable sales support the property valuation analysis process. The confidence score range is 60 - 100. Clear and consistent quality and quantity of data drive higher confidence scores while lower confidence scores indicate diversity in data, lower quality and quantity of data, and/or limited similarity of the subject property to comparable sales.

(3) The FSD denotes confidence in an AVM estimate and uses a consistent scale and meaning to generate a standardized confidence metric. The FSD is a statistic that measures the likely range or dispersion an AVM estimate will fall within, based on the consistency of the information available to the AVM at the time of estimation. The FSD can be used to create confidence that the true value has a statistical degree of certainty.

**LAST MARKET SALE & SALES HISTORY**

| | | | |
|---|---|---|---|
| Recording Date | 10/28/1999 | Deed Type | Grant Deed |
| Settle Date | 10/25/1999 | Owner Name | Dang Hoan |
| Sale Price | $800,000 | Owner Name 2 | Dang Diana |
| Price Per Square Feet | $217.10 | Seller | Glasgow Circle Developers |
| Document Number | 285977 | | |

| | |
|---|---|
| Recording Date | 10/28/1999 |
| Sale Price | $800,000 |
| Buyer Name | Dang Hoan & Diana |
| Seller Name | Glasgow Circle Developers |
| Document Number | 285977 |
| Document Type | Grant Deed |

**MORTGAGE HISTORY**

| | | | | | |
|---|---|---|---|---|---|
| Mortgage Date | 08/28/2018 | 12/07/2004 | 07/10/2003 | 01/29/2003 | 08/02/2002 |
| Mortgage Amount | $4,450,000 | $100,000 | $259,000 | $262,000 | $265,000 |
| Mortgage Lender | Poppy Bk | 1st United Svc Cu | Provident Fndg Assoc s Lp | Provident Fndg Assocs Lp | Provident Fndg Assocs Lp |
| Mortgage Code | Conventional | Conventional | Conventional | Conventional | Conventional |
| Mortgage Type | Refi | Refi | Refi | Refi | Refi |

| | | | |
|---|---|---|---|
| Mortgage Date | 04/10/2001 | 03/31/2000 | 10/28/1999 |
| Mortgage Amount | $275,000 | $200,000 | $500,000 |
| Mortgage Lender | Provident Fndg Assocs Lp | Provident Fndg Assocs Lp | Downey S&L Assn Fa |
| Mortgage Code | Conventional | Conventional | Conventional |
| Mortgage Type | Refi | Refi | Resale |

**FORECLOSURE HISTORY**

| | |
|---|---|
| Document Type | Notice Of Default |
| Default Date | 03/18/2020 |
| Foreclosure Filing Date | 03/18/2020 |
| Recording Date | 03/19/2020 |
| Document Number | 53695 |
| Default Amount | $156,397 |
| Original Doc Date | 08/28/2018 |
| Original Document Number | 137915 |

**Property Details** Courtesy of DAISY SINGH, MLS Listings

The data within this report is compiled by CoreLogic from public and private sources. The data is deemed reliable, but is not guaranteed. The accuracy of the data contained herein can be independently verified by the recipient of this report with the applicable county or municipality.

Generated on: 04/17/20

Page 2/3

UAD Version 9/2011 Produced by ClickFORMS Software 800-622-8727          Page   13   of   34

File No.  20-000912-01-1
Loan No  0

Borrower   CBR Electric Inc
Property Address  6 Campbell Pl
City  Danville                County                Contra Costa                State   CA   Zip Code   94526-2949
Lender/Client   Poppy Bank                        Address   438 First Street, Santa Rosa, CA 95401



Alpha RE Appraisal Service 925.200.0070
**PLAT MAP**

| | | | | | | File No. | 20-000912-01-1 |
|---|---|---|---|---|---|---|---|
| | | | | | | Loan No | 0 |

| Borrower | | | CBR Electric Inc | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6 Campbell Pl | | | | | | |
| City | Danville | County | Contra Costa | State | CA | Zip Code | 94526-2949 |
| Lender/Client | Poppy Bank | | Address | | 438 First Street, Santa Rosa, CA 95401 | | |



Alpha RE Appraisal Service 929200.0070

**FLOOD MAP ADDENDUM**

File No.    20-000912-01-1
Loan No    0

| Owner | CBR Electric Inc | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6 Campbell Pl | | | | | | |
| City  Danville | | County | Contra Costa | State | CA | Zip Code | 94526-2949 |
| Client    Poppy Bank | | | | Address    438 First Street, Santa Rosa, CA 95401 | | | |



**Flood Map Legends**

Flood Zones

- ▨ Areas inundated by 500-year flooding
- ▨ Areas outside of the 100 and 500 year flood plains
- ▨ Areas inundated by 100-year flooding
- ▨ Areas inundated by 100-year flooding with velocity hazard
- ▨ Floodway areas
- ▨ Floodway areas with velocity hazard
- ▨ Areas of undetermined but possible flood hazard
- ▨ Areas not mapped on any published FIRM

**Flood Zone Determination**

| | |
|---|---|
| SFHA (Flood Zone): | Out |
| Within 250 ft. of multiple flood zones? | No |
| Community: | 060707 |
| Community Name: | DANVILLE, TOWN OF |
| Zone:    X    Panel:    060707 0455G    Panel Date: | 03/21/2017 |
| FIPS Code:    06013    Census Tract: | 3462.04 |

This Report is for the sole benefit of the Customer that ordered and paid for the Report and is based on the property information provided by that Customer. That Customer's use of this Report is subject to the terms agreed to by that Customer when accessing this product. THE SELLER OF THIS REPORT MAKES NO REPRESENTATIONS OR WARRANTIES TO ANY PARTY CONCERNING THE CONTENT, ACCURACY, OR COMPLETENESS OF THIS REPORT INCLUDING ANY WARRANTY OR MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. The seller of this Report shall not have any liability to any third party for any use or misuse of this Report.

Aloha RE Appraisal Service 925.200.8710

## LOCATION MAP ADDENDUM

File No.    20-000912-01-1
Loan No    0

| Borrower | | CBR Electric Inc | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6 Campbell Pl | | | | | | |
| City | Danville | County | Contra Costa | State | CA | Zip Code | 94526-2949 |
| Lender/Client | | Poppy Bank | Address | | 438 First Street, Santa Rosa, CA 95401 | | |



Alpha RE Appraisal Service 925.200.0070

## SUBJECT PHOTO ADDENDUM

File No.    20-000912-01-1
Loan No    0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | | | CBR Electric Inc | | | | |
| Property Address | 6 Campbell Pl | | | | | | |
| City | Danville | County | Contra Costa | State | CA | Zip Code | 94526-2949 |
| Lender/Client | | Poppy Bank | Address | 438 First Street, Santa Rosa, CA 95401 | | | |



**FRONT OF
SUBJECT PROPERTY**

6 Campbell Pl
Danville, CA 94526-2949



**REAR OF
SUBJECT PROPERTY**

Exterior only inspection



**STREET SCENE**

Alpha RE Appraisal Service 925.200.0070

Additional Photos od subject provided in email to appraiser's office    File No.    20-000912-01-1

Loan No    0

| Borrower | CBR Electric Inc | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6 Campbell Pl | | | | | | |
| City | Danville | County | Contra Costa | State | CA | Zip Code | 94526-2949 |
| Lender/Client | Poppy Bank | | Address | 438 First Street, Santa Rosa, CA 95401 | | | |



rear of property
(provided by owner)  July 2018



pool view
(provided by owner)



Alpha Inc Appraisal Service 925.930.0070

| | | COMPARABLES 1-2-3 | | | | File No. | 20-000912-01-1 |
| | | | | | | Loan No | 0 |

| Borrower | | | CBR Electric Inc | | | | |
| Property Address | 6 Campbell Pl | | | | | | |
| City | Danville | County | Contra Costa | State | CA | Zip Code | 94526-2949 |
| Lender/Client | Poppy Bank | Address | | 438 First Street, Santa Rosa, CA 95401 | | | |



**COMPARABLE SALE #** 1
26 Campbell Pl
Danville, CA 94526



**COMPARABLE SALE #** 2
70 Barrons Pl
Danville, CA 94526



**COMPARABLE SALE #** 3
25 Barons Pl
Danville, CA 94526

Alpha RE Appraisal Service 929.200.0070

COMPARABLES 4-5-6

File No.    20-000912-01-1
Loan No    0

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | | | | CBR Electric Inc | | |
| Property Address | 6 Campbell Pl | | | | | |
| City | Danville | County | Contra Costa | State | CA | Zip Code    94526-2949 |
| Lender/Client | | Poppy Bank | Address | 438 First Street, Santa Rosa, CA 95401 | | |



**COMPARABLE SALE #**    4
395 Edinburgh Cir
Danville, CA 94526



**COMPARABLE SALE #**    5
5 Edinburgh Pl
Danville, CA 94526

**COMPARABLE SALE #**    6

Alpha RE Appraisal Service 9252000070

## COMMENT ADDENDUM

File No.    20-000912-01-1
Loan No    0

| Borrower | CBR Electric Inc | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6 Campbell Pl | | | | | | |
| City | Danville | County | Contra Costa | State | CA | Zip Code | 94526-2949 |
| Lender/Client | Poppy Bank | | Address 438 First Street, Santa Rosa, CA 95401 | | | | |

Appraisers Disclaimer/ Disclosure Commentary Page

NOTE: Appraiser's E&O policy has been embedded in this report at request of client. AT THE ADVISE OF THE POLICY ISSUER, AND LEGAL COUNSEL THE LENDER/ CLIENT SHOULD NOT DISTRIBUTE THE E/O DECLARATION PAGE TO ANY 3rd PARTIES OR UNINTENDED USERS. Inclusion of both are for visual assurance to client that appraiser is accordingly licensed and insured. Some information, on advise of legal counsel, is redacted.

THE UNDERSIGNED APPRAISER HAS NOT IDENTIFIED ANY SELLER, BUYER OR BORROWER AS AN INTENDED USER OF THIS APPRAISAL REPORT AND NO ONE OTHER THEN IDENTIFIED LENDER/ CLIENT (PAGE 1) MAY RELY ON THIS REPORT. NO OTHER PARTIES MAY RELY ON THIS REPORT FOR ANY PURPOSE. SUCH PARTIES SHOULD OBTAIN AN APPRAISAL REPORT COMPLETED BY AN APPRAISER OF THEIR CHOICE FOR THEIR OWN USE.
THIS REPORT SHOULD NOT BE USED AS A BASIS FOR PROPERTY PURCHASE DECISION OR AS ANY APPRAISAL CONTINGENCY IN A PURCHASE AGREEMENT RELATING TO THE PROPERTY

Appraisal was performed following public awareness that COVID-19 was affecting residents in USA & declared a pandemic by the World Health Organization. At the time of this appraisal, COVID-19 was beginning to have widespread health and economic impacts. Effects of COVID-19 on real estate market in the area of the subject property were not yet measurable based on reliable data. Analyses & value opinion in this appraisal are based on the data available to appraiser at time of assignment & apply only as of effective date indicated. No analyses or opinions contained in this appraisal should be construed as predictions of future market conditions or value.
The reader is again cautioned, and reminded that the conclusions presented in this appraisal report apply only as of the effective date(s) indicated. The appraiser makes no representation as to the effect on the subject property of any unforeseen event, subsequent to the effective date of the appraisal.

The appraiser certifies and agrees that this appraisal report was prepared in accordance with the requirements of Title XI of the Financial Institutions, Reform, Recovery, and Enforcement Act (FIRREA) of 1989, as amended (12 U.S.C. 3331 et seq.), and any applicable implementing regulations in effect at the time the appraiser signs the appraisal certification.

In compliance with the Ethics Rule of USPAP, I hereby certify I have performed an assignment regarding the subject property within the 3 year time period, preceding acceptance of this assignment, as an appraiser or in any other capacity.
Exposure time (definition listed below) for subject property is between : 30+- days based on appraiser's research of the relevant market data.
Exposure time: estimated length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal.

Highest and Best Use Base on USPAP "summarize the support and rationale for that opinion" [SR 2-2 (b) (ix)].
"An attempted analysis of highest and best use involves two considerations: [1] the most likely and profitable use of the site "as if vacant" under the requirements set forth above and, [2] if a property is "already improved", it is the use that should be made of the property to maximize value"
Subject's H&B is as improved as it part of a subdivision and it would be unlikely that the property would be torn down and sold as vacant land. The improved value is greater than the value of the land with demolition costs.

Appraiser is not a legal expert, but to the best of the appraiser's knowledge, has completed this report in compliance with the Appraiser Independence Requirements (AIR) and with the Frank-Dodd Act.

UAD Quality Rating and Related Subject Data
UAD offers a limited number of quality ratings, some properties may not fall neatly in to one of these
much left open to judgment in the definitions. Appraiser used the UAD definitions to make a best faith judgment of the rating of the subject property, and used the same approach to rate the comparables displayed in this report.

No, employee, director, officer or agent of the lender, or any other third party acting as a Joint venture partner, independent contractor, appraisal Management Company, or partner on behalf of the lender has influenced or attempted to influence the development, reporting, result or review of this assignment through coercion, extortion, collusion, compensation, instruction, inducement, intimidation, bribery or in any other manner. I have not been contacted by anyone other than the intended user (lender/client as identified on the first page of the report), borrower, or designated contact to make an appointment to enter the property. I agree to immediately report any unauthorized contacts either personally or by phone or electronically to client.

1004MC comments
The 1004MC form has been completed by the appraiser as a required element for Fannie Mae/Freddie Mac for all appraisals involved in federally transacted program. All comps contract dates are listed on the grid in the Date of Sale cell. The close of escrow dates are located on line above financing. MLS #s/ days on market are located in verification section below  address each comp.
No market change adjustments are made to the closed sales as there has been no decrease in value when comparing the most recent 3 months to the prior 9 months. No market change adjustment is made to the pending sales for the same reason and also as their contract prices is unknown and confidential information, any adjustment made would be arbitrary. No sale to list price adjustment is made as properties are selling at or above LP. Please refer to Market Conditions/1004MC addendum section for further clarification.
1004 MC reflects search based on houses in subject's market area.
The 1004mc was also used to provide number of active competing listings and settled sales, as indicated on top of page 2.
The neighborhood figures represent the whole of subject's neighborhood and not only competing properties.
The reader should be aware that the 1004MC form requests:
- the median (or average) values for comparable properties which may not match the information requested on the appraisal form, which is the predominant value for all properties within the defined neighborhood.
-The information obtained to complete the 1004MC form was taken from the local Multiple Listing Service and may contain errors and does not contain concession information. Due to the number of properties needed to create statistics, the raw data cannot be fully verified. Deemed to be reliable but not guaranteed. A statistical analysis program was used to graph the trend and interpret the data.
-Listing information may not be reliable due to range pricing and below market pricing used to attract multiple offers and higher prices.
-Conclusions are based on competitive properties to the subject and using criteria that prospective buyers would consider. The trends for competitive properties to subject may or may not be representative of the overall market trends as required by the URAR form.
To provide clear and accurate trends the neighborhood and the competitive to subject properties were analyzed.
-Anomalies may affect the overall trend. Short term market spikes based on catastrophic events (natural or otherwise). Seasonality changes can also show value increase or decline. Seasonality changes occur in most markets and are based on the school calendar. Many sellers/buyers with school age members tend to market the properties based on this fact. As a result numbers will show some stronger activity and increases between 2nd and 3rd quarters of the year.
-Foreclosure and REO trends are reported for the market neighborhood and is based on local MLS reports.

NOTE: SOME COMP PHOTOS MAY BE MLS PHOTOS; ALAMEDA COUNTY IS CURRENTLY IN "SHELTER IN PLACE" DUE TO COVID 19 MANDATES.

Appraisal Software

**Market Conditions Addendum to the Appraisal Report**

File No.  20-000912-01-1
Loan No  0

| The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009. |
|---|

| Property Address | 6 Campbell Pl | City | Danville | State | CA | ZIP Code | 94526-2949 |
|---|---|---|---|---|---|---|---|
| Borrower | CBR Electric Inc | | | | | | |

**Instructions:** The appraiser must use the information required on this form as the basis for his/her conclusions and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include that data in the analysis. If data sources provide all the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | Overall Trend | | | | |
|---|---|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 10 | 3 | 7 | | Increasing | X | Stable | Declining |
| Absorption Rate (Total Sales/Months) | 1.67 | 1 | 2.33 | | Increasing | X | Stable | Declining |
| Total # of Comparable Active Listings | 2 | 1 | 2 | | Declining | X | Stable | Increasing |
| Months of Housing Supply (Total Listings/Ab. Rate) | 1.20 | 1.00 | 0.86 | | Declining | X | Stable | Increasing |
| Median Sale & List Price, DOM, Sale/List % | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | Overall Trend | | | | |
| Median Comparable Sales Price | 1,215,000 | 1,376,000 | 1,460,000 | | Increasing | X | Stable | Declining |
| Median Comparable Sales Days on Market | 37 | 69 | 35 | | Declining | X | Stable | Increasing |
| Median Comparable List Price | 1,514,975 | 1,134,900 | 1,572,000 | | Increasing | X | Stable | Declining |
| Median Comparable Listings Days on Market | 33 | 67 | 35 | | Declining | X | Stable | Increasing |
| Median Sale Price as % of List Price | 100% | 99% | 103% | | Increasing | X | Stable | Declining |
| Seller-(developer, builder, etc.) paid financial assistance prevalent? | | | Yes | X | No | | | |

Explain in detail seller concessions trends for the past 12 months (e.g. seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs condo fees, options, etc.)

At this time seller credits are not common place as house prices are low.  Some seller concessions for buyer's toward buyer's NRCC does occur but it is not prevalent in this market and when credits/concessiona are made they are typically under 3%.

Are foreclosure sales (REO sales) a factor in the market?  Yes  X  No   If yes, explain (including the trends in listings and sales of foreclosed properties).

Currently reos/short sales are not a factor in this market. 0 reo/ short. Market is improving.  Market values are increasing in subject's market and also within the entire Bay Area. This is evident by the displayed market trend and also on the CAR reports with additional support provided by the media with interviews with noted real estate economist. Market tis expected to grow as consumer confidence grow and with the Feds keeping the interest rates at historical low figures. Also market improvement is always more defined during spring/ summer markets as sellers/ buyers are becoming more mobile. Properties are selling with multiple offers and typically over LP.

Cite data sources for above information.

Mls as primary data source. Market research based on mls and trend analysis through statistical process.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales, and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.

There were a total of 20 Comparable Settled Sales in the past 12 months.

The Median Sales Price for the prior 7-12 months was $1,215,000 and for the current to prior 3 months is $1,460,000.

The Months Supply for the prior 7-12 months was 1 and 1 for the current to prior 3 month period.

Statistics were generated from reported MLS market search. Details regarding calculations/process go to: http://bradfordsoftware.com/1004mc/calc.shtml

Entire market for neighborhood was analyzed. Comps included in market are all properties (active/pendings and closed sales). Regression/graph analysis  also used.

This is a general/inclusive neighborhood trend analysis/not property specific. Neighborhood takes into account the socio-economic realms for the area along with property location, size and utility. General and inclusive nature of this trend also includes all properties regardless of interior condition & remodeling.

| If the subject is a unit in a condominium or cooperative project, complete the following: | | Project Name: | | | | | |
|---|---|---|---|---|---|---|---|
| Subject Project Data | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | Overall Trend | | | |
| Total # of Comparable Sales (Settled) | | | | Increasing | | Stable | Declining |
| Absorption Rate (Total Sales/Months) | | | | Increasing | | Stable | Declining |
| Total # of Active Comparable Listings | | | | Declining | | Stable | Increasing |
| Months of Unit Supply (Total Listings/Ab. Rate) | | | | Declining | | Stable | Increasing |

Are foreclosures sales (REO sales) a factor in the project?  Yes  No  If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

| Signature | | Signature | |
|---|---|---|---|
| | TD C/L | | |
| Appraiser Name | T. Daisy Singh | Supervisor Name | |
| Company Name | Alpha RE Appraisal Service 925.200.0070 | Company Name | |
| Company Address | 4847 Hopyard Rd Ste 4-384, Pleasanton, CA 94588 | Company Address | |
| State License/Certification # | AR006647 | State CA | State License/Certification # | State |
| Email Address | areas2@sbcglobal.net  CC areas2014@gmail.com | Email Address | |

Freddie Mac Form 71 March 2009          UAD Version 9/2011 Produced by ClickFORMS Software 800-622-8727    Fannie Mae Form 1004MC March 2009

Alpha RE Appraisal Service 925.200.0070

## MARKET ANALYSIS CHARTS

File No.    20-000912-01-1

Loan No    0

| Borrower | CBR Electric Inc | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 6 Campbell Pl | | | | | | |
| City Danville | | County | Contra Costa | State | CA | Zip Code | 94526-2949 |
| Lender/Client | Poppy Bank | | | Address | 438 First Street, Santa Rosa, CA 95401 | | |



**TOTAL SALES AND LISTINGS**

There were 10 sales prior 7-12 months and 7 sales current to 3 months ago. There were 2 listings prior 7-12 months and 2 listings current to 3 months ago.



**MEDIAN SALES PRICE**

Prior 7-12 months the median was $1,215,000. Current to 3 months ago the median was $1,460,000.



**MONTHS-SUPPLY-OF-INVENTORY (MSI)**

Prior 7-12 months the month's supply was 1. Current to 3 months ago the month's supply was 0.86.

Alpha RE Appraisal Service 925.200.0070

## MEDIAN PRICE - BROKEN DOWN

File No.   20-000912-01-1
Loan No    0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | CBR Electric Inc | | | | | | |
| Property Address | 6 Campbell Pl | | | | | | |
| City   Danville | | County | Contra Costa | State | CA | Zip Code | 94526-2949 |
| Lender/Client | Poppy Bank | | Address | 438 First Street, Santa Rosa, CA 95401 | | | |

### MEDIAN PRICE BROKEN INTO MARKETING TIME (DAYS ON MARKET)

| Days On Market | Median Price |
|---|---|
| 351+ Days | $0 |
| 301-350 Days | $0 |
| 251-300 Days | $0 |
| 201-250 Days | $0 |
| 151-200 Days | $0 |
| 101-150 Days | $1,523,000 |
| 51-100 Days | $1,775,000 |
| 0-50 Days | $1,327,500 |

The table displays the market's change in median sales price on a monthly basis.



This chart shows the relationship between marketing time (how long a property is left on the market) and sales price.
This chart is especially useful for determining typical marketing times and how long it will take to sell for a given price.

Alpha RE Appraisal Service 925.200.0070

**TIME ADJUSTMENT FACTOR**

File No. 20-000912-01-1
Loan No 0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | CBR Electric Inc | | | | | | |
| Property Address | 6 Campbell Pl | | | | | | |
| City  Danville | | County | Contra Costa | State | CA | Zip Code | 94526-2949 |
| Lender/Client | Poppy Bank | | | Address  438 First Street, Santa Rosa, CA 95401 | | | |

### TIME ADJUSTMENT FACTOR BY MONTH FOR THE LAST 12 MONTHS

| Time Period | Median Sales Price | Current Month's Median | Time Adjustment Factor |
|---|---|---|---|
| 12 months ago | $1,130,000 | $1,420,000 | 26% |
| 11 months ago | $1,257,500 | $1,420,000 | 13% |
| 10 months ago | $1,775,000 | $1,420,000 | -20% |
| 9 months ago | N/A * | $1,420,000 | N/A* |
| 8 months ago | N/A * | $1,420,000 | N/A* |
| 7 months ago | $1,157,500 | $1,420,000 | 23% |
| 6 months ago | N/A * | $1,420,000 | N/A* |
| 5 months ago | $1,449,500 | $1,420,000 | -2% |
| 4 months ago | $1,315,000 | $1,420,000 | 8% |
| 3 months ago | $1,134,900 | $1,420,000 | 25% |
| 2 months ago | $1,465,000 | $1,420,000 | -3% |
| Current month | $1,420,000 | $1,420,000 | 0% |

The table displays the market's change in median sales price on a monthly basis.

### TIME ADJUSTMENT FACTOR BY MONTH FOR THE LAST 12 MONTHS



Notes:
(*) Data is not available for this period. The time adjustment factor of the previous month will be applied.
(**) When the time adjustment factor is greater than 100%, the value on the graph is limited at 100%.
(***) When the time adjustment factor is less than -100%, the value on the graph is limited at -100%.
(****) The Current Month's Median has been derived from 2 and 3 current months.

Alpha RE Appraisal Service 925.206.9070

UNIFORM APPRAISAL DATASET (UAD)
Property Condition and Quality Rating Definitions

File No.    20-000912-01-1
Loan No    0

# Requirements - Condition and Quality Ratings Usage

Appraisers must utilize the following standardized condition and quality ratings within the appraisal report.

## Condition Ratings and Definitions

**C1**
The improvements have been recently constructed and have not been previously occupied. The entire structure and all components are new and the dwelling features no physical depreciation.

**Note:**   *Newly constructed improvements that feature recycled or previously used materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100 percent new foundation and the recycled materials and the recycled components have been rehabilitated/remanufactured into like-new condition. Improvements that have not been previously occupied are not considered "new" if they have significant physical depreciation (that is, newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).*

**C2**
The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category are either almost new or have been recently completely renovated and are similar in condition to new construction.

**Note:** *The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.*

**C3**
The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

**Note:**   *The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. It's estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been replaced but not to the level of a complete renovation.*

**C4**
The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

**Note:**   *The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property.*

**C5**
The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability are somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

**Note:**   *Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.*

**C6**
The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

**Note:**   *Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.*

Alpha RE Appraisal Service 925.200.0670

UNIFORM APPRAISAL DATASET (UAD)
Property Condition and Quality Rating Definitions

File No.    20-000912-01-1
Loan No    0

### Quality Ratings and Definitions

**Q1**
Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are exceptionally high quality.

**Q2**
Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residences constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high-quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

**Q3**
Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

**Q4**
Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

**Q5**
Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

**Q6**
Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure.

### Requirements - Definitions of Not Updated, Updated and Remodeled

**Not Updated**

Little or no updating or modernization. This description includes, but is not limited to, new homes.

Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

**Updated**

The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.

An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components meet existing market expectations. Updates do *not* include significant alterations to the existing structure.

**Remodeled**

Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.

A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of square footage). This would include a complete gutting and rebuild.

### Explanation of Bathroom Count

Three-quarter baths are counted as a full bath in all cases. Quarter baths (baths that feature only a toilet) are not included in the bathroom count. The number of full and half baths is reported by separating the two values using a period, where the full bath count is represented to the left of the period and the half bath count is represented to the right of the period.

Example:
3.2 indicates three full baths and two half baths.

Alpha RE Appraisal Service 925.200.0070

## UNIFORM APPRAISAL DATASET (UAD)
### Property Description Abbreviations Used in This Report

File No.   20-000912-01-1
Loan No   0

| Abbreviation | Full Name | May Appear in These Fields |
|---|---|---|
| A | Adverse | Location & View |
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| ArmLth | Arms Length Sale | Sales or Financing Concessions |
| AT | Attached Structure | Design (Style) |
| B | Beneficial | Location & View |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| BsyRd | Busy Road | Location |
| c | Contracted Date | Date of Sale/Time |
| Cash | Cash | Sale or Financing Concessions |
| Comm | Commercial Influence | Location |
| Conv | Conventional | Sale or Financing Concessions |
| cp | Carport | Garage/Carport |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| cv | Covered | Garage/Carport |
| DOM | Days On Market | Data Sources |
| DT | Detached Structure | Design (Style) |
| dw | Driveway | Garage/Carport |
| e | Expiration Date | Date of Sale/Time |
| Estate | Estate Sale | Sale or Financing Concessions |
| FHA | Federal Housing Administration | Sale or Financing Concessions |
| g | Garage | Garage/Carport |
| ga | Attached Garage | Garage/Carport |
| gbi | Built-In Garages | Garage/Carport |
| gd | Detached Garage | Garage/Carport |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| GR | Garden | Design (Style) |
| HR | High Rise | Design (Style) |
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Ind | Industrial | Location & View |
| Listing | Listing | Sales or Financing Concessions |
| Lndfl | Landfill | Location |
| LtdSght | Limited Sight | View |
| MR | Mid Rise | Design (Style) |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| o | Other | Basement & Finished Rooms Below Grade |
| O | Other | Design (Style) |
| op | Open | Garage/Carport |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PubTrn | Public Transportation | Location |
| PwrLn | Power Lines | View |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RH | USDA - Rural Housing | Sale or Financing Concessions |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| RT | Row or Townhouse | Design (Style) |
| s | Settlement Date | Date of Sale/Time |
| SD | Semi-detached Structure | Design (Style) |
| Short | Short Sale | Sale or Financing Concessions |
| sf | Square Feet | Area, Site, Basement |
| sqm | Square Meters | Area, Site |
| Unk | Unknown | Date of Sale/Time |
| VA | Veterans Administration | Sale or Financing Concessions |
| w | Withdrawn Date | Date of Sale/Time |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| Woods | Woods View | View |
| Wtr | Water View | View |
| WtrFr | Water Frontage | Location |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

File No.   20-000912-01-1
Loan No   0

| Borrower | | | CBR Electric Inc | | | | |
|---|---|---|---|---|---|---|---|
| Property Address  6 Campbell Pl | | | | | | | |
| City | Danville | County | Contra Costa | | State | CA | Zip Code | 94526-2949 |
| Lender/Client | | Poppy Bank | Address | | 438 First Street, Santa Rosa, CA 95401 | | |



Business, Consumer Services & Housing Agency

## BUREAU OF REAL ESTATE APPRAISERS
### REAL ESTATE APPRAISER LICENSE

**T. Daisy Singh**

has successfully met the requirements for a license as a residential real estate appraiser in the State of California and is, therefore, entitled to use the title:

"Certified Residential Real Estate Appraiser"

This license has been issued in accordance with the provisions of the Real Estate Appraisers' Licensing and Certification Law.

BREA APPRAISER IDENTIFICATION NUMBER:   AR 006647

Effective Date:   January 21, 2019
Date Expires:   January 20, 2021

Jim Martin, Bureau Chief, BREA

3043532

THIS DOCUMENT CONTAINS A TRUE WATERMARK – HOLD UP TO LIGHT TO SEE "CHAIN LINK"

Rent Declaration Page
File No.   20-000912-01-1
Loan No   0

| | | | | | |
|---|---|---|---|---|---|
| Borrower | CBR Electric Inc | | | | |
| Property Address | 6 Campbell Pl | | | | |
| City  Danville | | County | Contra Costa | State  CA | Zip Code  94526-2949 |
| Lender/Client  Poppy Bank | | | Address  438 First Street, Santa Rosa, CA 95401 | | |



## LIA Administrators & Insurance Services

**APPRAISAL AND VALUATION**
**PROFESSIONAL LIABILITY INSURANCE POLICY**



ASPEN

### DECLARATIONS

**ASPEN AMERICAN INSURANCE COMPANY**
(A stock insurance company herein called the "Company")
175 Capitol Blvd. Suite 100
Rocky Hill, CT 06067

| Date Issued | Policy Number | Previous Policy Number |
|---|---|---|
| 03/12/2020 | AAI005578-05 | AAI005578-04 |

THIS IS A **CLAIMS MADE AND REPORTED POLICY**. COVERAGE IS LIMITED TO LIABILITY FOR ONLY THOSE **CLAIMS** THAT ARE FIRST MADE AGAINST THE **INSURED** DURING THE **POLICY PERIOD** AND THEN REPORTED TO THE COMPANY IN WRITING NO LATER THAN SIXTY (60) DAYS AFTER EXPIRATION OR TERMINATION OF THIS POLICY, OR DURING THE **EXTENDED REPORTING PERIOD**, IF APPLICABLE, FOR A **WRONGFUL ACT** COMMITTED ON OR AFTER THE **RETROACTIVE DATE** AND BEFORE THE END OF THE **POLICY PERIOD**. PLEASE READ THE POLICY CAREFULLY.

Item

1. Customer ID:  162792
   Named **Insured:**
   ALPHA RE APPRAISAL SERVICE
   T. Daisy Singh
   4847 Hopyard Rd. 4-384
   Pleasanton, CA 94588

2. **Policy Period:** From: 03/15/2020  To: 03/15/2021
   12:01 A.M. Standard Time at the address stated in 1 above.

3. **Deductible:** $1,000  Each **Claim**

4. **Retroactive Date:** 03/15/1993

5. **Inception Date:** 03/15/2016

6. **Limits of Liability:**   A.          Each **Claim**
                              B.          Aggregate

7. Mail all notices, including notice of **Claim,** to:
   LIA Administrators & Insurance Services
   1600 Anacapa Street
   Santa Barbara, California 93101
   (800) 334-0652;   Fax:  (805) 962-0652

8. **Annual Premium:**

9.  Forms attached at issue:  LIA002 (12/14)   LIA CA (11/14)   LIA012 (12/14)   LIA018 (10/14)

This Declarations Page, together with the completed and signed Policy Application including all attachments and exhibits thereto, and the Policy shall constitute the contract between the Named Insured and the Company.

03/12/2020
Date

By _____
Authorized Signature

LIA-001 (12/14)                                         Aspen American Insurance Company

Main RE Appraisal Service 925 890-0070

File No.    20-000912-01-1
Loan No    0

EXTERIOR

This modified set of instructions, Scope of Work, Statement of Assumptions and Limiting Conditions, and Certification replaces and supersedes the corresponding sections of the appraisal report to which this language is attached as an addendum. It is authorized and used with the express permission of Fannie Mae and Freddie Mac as of March 23, 2020. Any signatures attached to the original appraisal report and certifications are incorporated and apply to these revised sections.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, or definition of market value are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Additional modifications or deletions to this revised set of certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

## SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, including the condominium or cooperative project, if applicable (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

## INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

## INTENDED USER: The intended user of this appraisal report is the lender/client.

## DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third-party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

## STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. If the appraiser has included a floor plan in this appraisal report, it shows the approximate dimensions of the improvements. If included, the floor plan is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has relied on data provided by third parties in this appraisal report. Such data may include, but is not limited to, flood maps, multiple listing real estate services, tax assessment records, public land records, satellite imagery, virtual street views, property data services, surveys, engineering reports, and property data aggregations. After examination of the data and data sources, the appraiser has used only the data he or she considers reliable. The appraiser assumes there are no material omissions and makes no guarantees, express or implied, regarding the accuracy of this data.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

John Burns Real Estate Service 925 828 0079

File No.   20-000912-01-1
Loan No   0

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a personal visual inspection of the exterior of the subject property, from the street, as part of this appraisal assignment. I reported the condition of the improvements in factual, specific terms, relying on subject property information from third-party data sources. I reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property or cooperative interest (where applicable) that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. [RESERVED]

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, including the subject project (where applicable), subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate or cooperative interest (where applicable) that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

File No.   20-000912-01-1
Loan No   0

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

## SUPERVISORY APPRAISER'S CERTIFICATION: The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

100 Stony Point Road, Suite 200, Santa Rosa, CA 95401

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) ___08/20/2020___, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _08/20/2020__, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

(Debtors)
Hoan Dang and Diana Hongkham Dang
124 Agate Avenue
Newport Beach, CA 92662

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 08/20/2020 | Molly Meroney | /s/ Molly Meroney |
| --- | --- | --- |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## SERVICE LIST
### In Re HOAN DANG and DIANA HONGKHAM DANG
### Case No. 8:20-bk-11631-TA

### SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)

**Attorney for Debtors Diana Hongkham Dang and Hoan Dang:**
James C Bastian, Jr.  jbastian@shulmanbastian.com

**Trustee**: Karen S Naylor alane@ringstadlaw.com, knaylor@IQ7technology.com;
ecf.alert+Naylor@titlexi.com

**Attorney for Trustee**: James C Bastian, Jr.  jbastian@shulmanbastian.com

**Attorney for Trustee**: Arturo M Cisneros arturo@mclaw.org

**Attorney for Trustee**:  Nathan F Smith   nathan@mclaw.org,  CACD_ECF@mclaw.org;
mcecfnotices@ecf.courtdrive.com;  cvalenzuela@mclaw.org

**U.S. Trustee:** United States Trustee (SA)  ustpregion16.sa.ecf@usdoj.gov

**Attorney for Interested Party United Electric Supply Company**: Fred Whitaker
lshertzer@cwlawyers.com, spattas@cwlawyers.com

**Attorney for Creditor Capital One Auto Finance, a division of Capital One, N.A., c/o AIS
Portfolio Services LP**: Ambrish B Patel  apatelEI@americaninfosource.com

**Attorney for Creditor OneSource Distributors, LLC:**  Pamela J Scholefield
pam@construction-laws.com

**Attorney for Creditor 1st United Service Credit Union:**
Reilly D Wilkinson  rwilkinson@scheerlawgroup.com